IN THE CIRCUIT COURT OF THE 20th JUDICIAL CIRCUIT,
IN AND FOR LEE COUNTY, FLORIDA

CASE NO.

VINCENT GIACOMAZZI, individually
and on behalf of all others similarly situated

Plaintiff,

**CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

vs.

CHW GROUP, INC. d/b/a CHOICE HOME
WARRANTY,

Defendant.

_______________________________________/

## CLASS ACTION COMPLAINT

Plaintiff, VINCENT GIACOMAZZI (hereinafter "Plaintiff"), brings this class action against CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY ("Defendant") for its violations of the Florida Telephone Solicitation Act, §501.059 (hereinafter "FTSA") and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

## INTRODUCTION

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the unlawful actions of Defendant in negligently or willfully contacting Plaintiff on Plaintiff's personal and residential cellular telephone, in violation of the FTSA, thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

3. The FTSA was designed to prevent unwanted calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff.

4. The Federal Communications Commission (FCC) reports that unwanted calls constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021). In the fiscal year 2025 alone, the Federal Trade Commission (FTC) received 204,702 complaints from Florida consumers about unwanted telephone calls – ranking Florida fifth nationally per capita. *See* Federal Trade Commission, *Do Not Call Data Book 2025* (Dec. 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/DNC-Data-Book-2025.pdf (last visited Aug. 25, 2026).

5. The FTSA explicitly includes phone calls in its prohibition of unsolicited marketing of "telephonic sales calls."501.059 (j).

6. Plaintiff and each Class Member received unwanted calls from Defendant without proper regard to the FTSA, and in disregard for individual privacy. This lawsuit challenges all unwanted calls that were placed by or on behalf of Defendant to Plaintiff and Class Members from approximately August 2022, through the date of preliminary approval of class certification.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction pursuant to Florida Statute § 501.059; Florida Statute § 26.012(2) and Florida Rule of Civil Procedure 1.220. The matter in controversy exceeds the minimum jurisdictional requirement of this Court, exclusive of interest, costs, and attorney's fees.

8. Venue in this judicial district is proper under § 47.011, because a substantial part of the events or omissions giving rise to the claims in this case occurred in this county, including Defendant's transmission, either directly or through persons on its behalf, of the unlawful and unwanted calls to Plaintiff and other Class Members in this county, on their residential telephone numbers with Florida area codes – consumers and residents with Florida area codes.

9. The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, solicits consumers to purchase its products and services in this state, and has availed itself to the jurisdiction of the State of Florida by authorizing and transmitting the subject unauthorized telemarketing calls to Class Members in this state.

10. Defendant targets Florida consumers online, including with targeted advertising and website search engine optimization, and provides its services – home warranty coverage – to Florida real property owners and possessors.

11. Defendant is aware that is calling residents of Florida and Florida property owners and dialing into the State of Florida because it is calling Florida area codes and promotes the sale of its products and services to Florida property owners. Defendant then enters into home warranty contracts with Florida residents for homes in Florida. In doing so, Defendant has availed itself to the jurisdiction of Florida because its products and services are marketed to and directed to residents in Florida, and its products and services are used and administered in Florida. Defendant took these actions to establish contacts with, to conduct business in, and to facilitate activity with persons, in the State of Florida.

**PARTIES**

12. Plaintiff's domicile is in Florida and resides in Cape Coral, Florida.

13. Class Members are consumers, residents, and/or real property owners or possessors in the State of Florida.

14. Based upon publicly available information, Defendant is a is a New Jersey corporation with its principal Address located at 2147 NJ-27, 4th Floor Edison, New Jersey 08817.

15. Defendant uses a business model whereby it promotes its business by repeatedly soliciting consumers by placing unwanted calls, including to Plaintiff and Class Members, even after they have expressly requested that Defendant stop calling.

16. Defendant, directly or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited telemarketing calls that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

17. Defendant engages in the marketing, promotion, and sale of home warranty services.

18. Defendant, through its authorized sales agents, employees, marketers, lead generators, vendors, and/or contractors promotes its services using an unlawful telemarketing campaign.

19. Defendant continues to harass and solicit consumers who have expressly requested that Defendant stop contacting them.

20. To increase the sales volume and profits of its products and services, Defendant and/or its authorized sales agents repeatedly call consumers using an automated system for the selection and dialing of telephone numbers in violation of the FTSA.

21. Plaintiff and his wife purchased a home in Cape Coral, FL in December 2025.

22. In approximately May 2026, Plaintiff searched online for home warranty coverage by "Googling." Defendant's website targeted Plaintiff in response to his search for home warranties.

23. He inquired with Defendant about its services and to receive a quote, but he ultimately chose not to purchase Defendant's services or engage in business with Defendant.

24. After Plaintiff's initial inquiry and telling Defendant's agent that he did not want to use Defendant's services, terminating any further relationship or inquiry with Defendant, Defendant refused to take no for answer.

25. Defendant began an aggressive telemarketing campaign by incessantly bombarding Plaintiff with calls and text messages, multiple times a day, including after he expressly told Defendant multiple times over the phone and in writing to stop.

26. For example, on June 29, 2026, in direct response to Defendant's telemarketing text to him, Plaintiff texted STOP. Despite Defendant acknowledging Plaintiff's STOP request and stating to Plaintiff, "no more messages will be sent," Defendant continued to text Plaintiff as if he was re-opting in to receive text messages from Defendant when he did not. Plaintiff sent additional STOP requests in response to these continued texts, including on July 1, July 3, July 7, and July 8, 2026.

27. Plaintiff has received *at least* 62 unlawful calls since as early as June 29, 2026, to his personal and residential cellular phone number ending in 7101[1], after expressly requesting that Defendant stop and terminating any relationship with Defendant, including on:

a. 06/29/2026, T1:155 PM
b. 06/29/2026, T3:15 PM
c. 06/30/2026, T11:23:46 AM;
d. 07/01/2026, T1:20:44 PM;
e. 07/01/2026, T1:42:18 PM;
f. 07/01/2026, T2:08:35 PM;
g. 07/01/2026, T5:24:45 PM;
h. 07/01/2026, T5:31:01 PM;
i. 07/01/2026, T5:54:47 PM;
j. 07/02/2026, T11:51:54 AM;
k. 07/02/2026, T1:47:19 PM;
l. 07/03/2026, T11:45:02 PM;
m. 07/03/2026, T11:47:08 PM;
n. 07/03/2026, T11:50:16 PM;
o. 07/03/2026, T11:52:46 PM;
p. 07/03/2026, T12:05:51 PM;
q. 07/03/2026, T12:20:16 PM;

---

1. Plaintiff's full telephone number will be provided directly to counsel for Defendant. It is not being provided in this Complaint, a public document, to prevent further unwanted and unauthorized calls to him.

r. 07/03/2026, T12:45:47 PM;

s. 07/03/2026, T1:45:00 PM;

t. 07/07/2026, T12:14:16 PM;

u. 07/09/2026, T12:32:53 PM;

v. 07/09/2026, T1:33:00 PM;

w. 7/10/2026, T3:10:00 PM;

x. 07/10/2026, T:4:53:00 PM;

y. 07/13/2026, T2:32:37 PM;

z. 07/13/2026, T5:54:28 PM;

aa. 07/142026, T1:35:37 PM;

bb. 07/14/2026, T2:00:38 PM;

cc. 07/15/2026, T12:37:12 PM;

dd. 07/15/2026, T3:34:41 PM;

ee. 07/15/2026, T4:30:14 PM;

ff. 07/17/2026, T12:07:00 PM;

gg. 07/17/2026, T12:09:00 PM;

hh. 07/17/2026, T 2:09:00 PM;

ii. 07/17/2026, T5:13:00 PM;

jj. 07/17/2026, T5:31:00 PM;

kk. 07/20/2026, T2:05:00 PM;

ll. 07/20/2026, T2:07:00 PM;

mm. 07/20/2026, T2:58:00 PM;

nn. 07/21/2026, T3:52:00 PM;

oo. 07/21/2026, T5:58:00 PM;

pp. 07/21/2026, T6:00:00 PM;

qq. 07/22/2026, T3:50:00 PM;

rr. 07/22/2026, T5:58:00 PM;

ss. 07/23/2026, T2:18:00 PM;

tt. 07/23/2026, T2:20:00 PM;

uu. 07/23/2026, T2:22:00 PM;

vv. 07/24/2026, T12:41:00 PM;

ww. 07/24/2026, T1:03:00 PM;

xx. 07/27/2026, T3:51:00 PM;

yy. 07/27/2026, T5:55:00 PM;

zz. 07/27/2026, T5:56:00 PM;

aaa. 07/28/2026, T12:51:00 PM;

bbb. 07/28/2026, T1:08:00 PM;

ccc. 07/28/2026, T3:35:00 PM;

ddd. 07/29/2026, T3:21:00 PM;

eee. 07/29/2026, T5:49:00 PM;

fff. 7/30/2026, T3:59:00 PM;

ggg. 7/30/2026, T6:28:00 PM;

hhh. 7/31/2026, T12:44:00 PM;

iii. 7/31/2026, T12:45:00 PM; and

jjj. 7/31/2026, T5:25:00 PM;

28. Plaintiff personally spoke with Defendant's agents on numerous occasions and expressly told them he was not interested in Defendant's services and to stop calling, including on the first June 29, 2026, call he received after requesting that Defendant STOP in writing. On this call, Plaintiff expressly requested that Defendant stop calling to put Plaintiff on its do not call list.

29. Defendant ignored this request and called Plaintiff later that day on June 29 – Plaintiff again asked Defendant to stop calling him.

30. On July 1, 2026, Plaintiff spoke with a manager. Plaintiff reported to the manager that Defendant continued to call him despite his requests that Defendant stop. Plaintiff expressly told the manager that Defendant did not have permission to call and to stop calling.

31. On July 3, 2026, Plaintiff called Defendant numerous times and told each agent on every call to "stop calling me," including a manager.

32. On July 20, 2026, Plaintiff spoke with another manager. He told the manager to "stop calling me."

33. On July 29, 2026, Plaintiff told Defendant's agent "don't call me anymore."

34. When Plaintiff spoke with Defendant's agents, they told him that he would be taken off Defendant's lead list.

35. Plaintiff clearly and expressly requested that Defendant STOP contacting him, but Defendant failed to place him on Defendant's Do-Not-Call ("DNC") List.

36. Plaintiff requested to various agents, both over the telephone and by text message to STOP.

37. Defendant's agents identified Defendant as the source of the unlawful calls while on the phone calls with Plaintiff.

38. When Plaintiff called back the numbers that called him Defendant's agents answered the calls and stated thank you for calling Choice Home Warranty.

39. All the calls made by Defendant to Plaintiff were sent for the purpose of promoting Defendant's services and business. Defendant would have no reason to contact Plaintiff other than for the purpose of promoting or offering for sale its products and services.

40. At all times relevant herein, Plaintiff was the subscriber or customary user of his cellular telephone number that Defendant called and is financially responsible for phone service, including the cellular costs and data usage incurred as a result of the calls made to Plaintiff by Defendant.

41. Through the unsolicited telemarketing calls, Defendant contacted Plaintiff many times on Plaintiff's cellular telephone regarding an unsolicited service via an "automated system for the selection and dialing of numbers," as defined by §501.059(8)(a).

42. The calls at issue were sent using an automated system for the selection and dialing of numbers. A human would not have continued to manually select, and dial Plaintiff's number given his repeated requests to no longer be contacted.

43. The telephone number Defendant called is a "Called Party" as defined by § 501.059(1)(a).

44. The Calls at issue constituted a "Telephonic Sales Call" as defined by § 501.059(1)(a).

45. Plaintiff did not provide Defendant or its agents prior express written consent to continue to receive Telephonic Sales Calls, including unsolicited phone calls, to his cellular telephone, as outlined in § 501.059(1)(g).

46. Defendant is and was aware that it is placing unsolicited Telephonic Sales Calls using an automated system for the selection and dialing of numbers to Plaintiff and other consumers without maintaining their prior express written consent.

47. The calls by Defendant, or its agents, violated § 501.059.

48. To promote and market its services, Defendant, directly or through persons on its behalf, routinely and systematically violates Fla. Stat. § 501.059 by failing to honor opt-out requests and clear revocations of any conceivable consent, and delivering telemarketing solicitations, advertisements and marketing messages to residential or cellular telephone numbers registered, or who should have been registered, on Defendant's internal DNC list.

49. Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's cellular data, phone storage, and battery life, his privacy was wrongfully invaded, his seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted, harassing, time consuming, and nuisance phone calls, forcing him to divert attention away from personal time, homelife, and work, and causing disruption to business, sleep, and other activities. The calls are a disruptive nuisance and tied up Plaintiff's phone line. Not only did the receipt of the phone calls distract and take time away from Plaintiff's personal and work activities, but Plaintiff was also forced to spend significant time communicating with Defendant's agents to get them to stop calling. *See Drazen v. GoDaddy.com, LLC,* No. 21-10199 (11th Cir. July 24, 2023 (en banc) ("A plaintiff who receives an unwanted, illegal text message suffers a concrete injury").

50. Class Members have similarly suffered harm. "These calls aren't just a nuisance—they add up to billions of dollars lost to fraud, undermine consumer confidence in the phone network, and harm public safety."[2]

## CLASS REPRESENTATION ALLEGATIONS

51. Plaintiff brings this class action under Rule 1.220 of the Florida Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **FTSA No Consent Class: All persons in the State of Florida (i) who were sent a telephonic sales call within the four years prior to the filing of the Complaint, (ii) using the same equipment or type of equipment utilized to call Plaintiff (iii) from or on behalf of Defendant and/or its agents, (iv) promoting Defendant's services, (v) without the recipients' statutorily required prior express written consent (vi) through the date of class certification.**

> **FTSA Internal DNC Class: All persons in the State of Florida who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received one or more phone calls, (2) regarding Defendant's property, goods, and/or services, (3) after the person previously communicated to Defendant or anyone calling on Defendant's behalf that he or she does not wish to receive calls.**

52. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable through Defendant's call records. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

53. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized robo call campaign electronically sent to particular telephone numbers,

---

2. *Fcc Mandates That Phone Companies Implement Caller Id Authentication to Combat Spoofed Robocalls*, 2020 WL 1634509, at *2 (OHMSV Mar. 31, 2020)

Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

54. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's phone logs, vendor records and marketing records.

55. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

56. **Class-Wide Relief under 1.220(b)(1) – The Existence and Predominance of Common Questions of Fact and Law**: Class-wide adjudication of Plaintiff's claims is appropriate to prevent inconsistent or varying adjudications concerning individual members of the class, which would establish incompatible standards of conduct for Defendant. Additionally, adjudications concerning individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not named parties to the case, or substantially impair or impede the ability of other members of the class who are not parties to the adjudication to protect their interest.

57. **Class-Wide Relief under 1.220(b)(3) – The Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or

fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

a. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents place phone calls to a Class member using any automated system to any telephone number;

b. How Defendant obtained the numbers of Plaintiff and Class Members;

c. Whether the dialing system used to place the phone calls is an automated system for the selection and dialing of numbers;

d. Whether Defendant engaged in telephonic sales call when it placed the phone calls which are the subject of this lawsuit;

e. Whether the phone calls placed to Plaintiff and Class Members violate the Florida Telephone Solicitation Act, Florida Statute §501.059 and its regulations;

f. Whether Defendant willfully or knowingly violated the Florida Telephone Solicitation Act, Florida Statute §501.059 or the rules prescribed under it;

g. Whether Defendant, either directly or through persons acting on its behalf, placed the phone calls to persons after they requested that Defendant stop calling;

h. Whether Defendant had adequate procedures in place to ensure that telephone calls to persons who requested that Defendant stop calling would no longer be called;

i. Whether Defendant, either directly or through persons acting on its behalf, willfully or knowingly placed the phone calls;

j. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

k. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

l. Whether Plaintiff and the Class are entitled to any other relief.

58. One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification.

59. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the Florida Telephone Solicitation Act, Florida Statue §501.059.

60. Plaintiff and members of the Class each received at least one telephonic sales call, advertising Defendant's services without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

61. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in TCPA and FTSA litigation and class action litigation.

62. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of

individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

63. **Class-Wide Injunctive Relief and Rule 1.220(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 1.220(b)(1) or Rule 1.220(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls. Because Defendant fails to honor opt-out and stop requests in violation of the law, the harm is ongoing and capable of repetition, demonstrating the need for an enforceable court order to enjoin future conduct.

**COUNT I**
**VIOLATIONS OF THE FLORIDA TELEPHONE SOLICITATION ACT, FLORIDA STATUTE §501.059**
**(On behalf of Plaintiff and the FTSA No Consent Class)**

64. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 63 of this Complaint as though fully stated herein.

65. The foregoing acts and omissions of Defendant constitutes numerous and multiple negligent and/or willful violations of Florida Telephone Solicitation Act, Florida Statute §501.059.

66. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. §501.059(8)(a).

67. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

68. "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection and dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

> a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and
>
> b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

69. Defendant failed to secure prior express written consent from Plaintiff and the Class members.

70. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

71. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

72. As a result of Defendant's negligent violations of the Florida Telephone Solicitation Act, Florida Statute §501.059, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to Florida Statute §501.059 (10)(a).

73. If it is determined that Defendant's telemarketing constitutes knowing and/or willful violations of the Florida Telephone Solicitation Act Florida Statute §501.059, Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to §501.059(10)(a)(b).

74. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

75. Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF THE FLORIDA TELEPHONE SOLICITATION ACT, FLORIDA STATUTE §501.059 (5)**
**(On behalf of Plaintiff and the FTSA Internal DNC Class)**

76. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 63 of this Complaint as though fully stated herein.

77. The foregoing acts and omissions of Defendant constitutes numerous and multiple willful violations of Florida Telephone Solicitation Act, Florida Statute §501.059(5).

78. "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:

(a) Made by or on behalf of the seller whose goods or services are being offered; or

(b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

79. Defendant continued to place outbound calls to Plaintiff after he previously communicated to Defendant that he did not wish to receive calls.

80. Defendant willfully, or a minimum negligently, failed to respect Plaintiff's requests for Defendant to STOP calling.

81. In violation of the FTSA, Defendant made and/or knowingly allowed continued telephonic sales calls to be made to Plaintiff and the Class members after they requested that Defendant STOP.

82. As a result of Defendant's knowing and/or willful violations of the Florida Telephone Solicitation Act Florida Statute §501.059, Plaintiff and The Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to §501.059(10)(a)(b).

83. As a result of Defendant's, at a minimum, negligent violations of the Florida Telephone Solicitation Act, Florida Statute §501.059, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to Florida Statute §501.059 (10)(a).

84. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

85. Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant for:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. Statutory damages of $500 per call, for each violation of the FTSA;

c. Willful damages at $1,500 per call, for each violation of the FTSA ;

d. An injunction prohibiting Defendant's from using an automated system for the selection and dialing of telephone numbers to call telephone numbers without the prior express written consent of the called party, prohibiting Defendant from calling individuals registered on, or who should be on, Defendant's internal Do-Not-Call list, and to those who have requested Defendant stop calling, and requiring Defendant to implement adequate policies and procedures to ensure unwanted calls are not placed to consumers;

e. Reasonable attorney's fees and costs; and

f. Such further and other relief as this Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 28, 2026

/s/ Joshua H. Eggnatz
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
MPascucci@JusticeEarned.com
JEggnatz@JusticeEarned.com
SGizzie@JusticeEarned.com

*Attorneys for Plaintiff and Class*